■ In the Matter of the Claim of BRUNO MIRANDA, Respondent. CROWN LEATHER GOODS CORP., Appellant; MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent.— This is an appeal by the employer from a decision of the Unemployment Insurance Appeal Board dated March 17, 1960 which reversed the decision of the Referee of December 11, 1959 and ruled that the claimant was eligible to receive benefits for the period from July 6, 1959 through July 19, 1959 despite the fact that claimant received $69.45 directly from the employer representing vacation pay for one week and $49 from the trustee of the fund in accordance with subdivision (a) of section 10 of the existing union agreement with the employer. Subdivision (a) of section 10 reads as follows: " (a) The Employer agrees to give vacation pay or bonus to each of the workers subject to this agreement in a sum equivalent to two (2%) per cent of the worker's earnings. In order to assure each worker of same, in view of the fact that he may change his employment during the year, payment of the foregoing shall be made as follows: The Employer shall pay weekly to [Herman A. Gray] as Chairman, who administers such Fund, for the respective benefit of the various workers for whom such payments are made, two (2%) per cent of the weekly earnings, including overtime, of all its workers subject to this agreement". Also pertinent are the following excerpts from subdivision (b) of section 10: " (b) In addition thereto, the Employer shall give to the workers as an additional vacation benefit, one or more days' pay * * * in accordance with the following schedule: * * * "An employee who has been employed in the shop for a period of three years or over shall receive one week's additional vacation pay". At a meeting held among the employees it was agreed that the first two weeks of July, 1959 should be the vacation period. This was against the wishes of the employer as it was the busy season but he agreed. The establishment was not closed and some of the workers were permitted to work during all or part of the period. The claimant completed his work for the week ending July 3, 1959 and received from his employer a check for his regular wages and a second check in the amount of $69.45 representing one additional week's wages plus payment for the July 4 holiday. Claimant was entitled to such under the portion of the collective bargaining agreement quoted above, having worked for the employer in excess of three years. In addition, claimant received a check for $49 from the Special Fund. As priorly noted this trust was funded by the employer to guarantee some vacation moneys to each employee, even if there be a change of employment during the year. Claimant testified that he was told by his foreman to return to work at the end of the two-week period, and that during that interim he unsuccessfully sought other employment. The Appeal Board, in reversing the Referee, found the claimant entitled to receive unemployment benefits for the entire period in issue, holding that the two-week period was not a "vacation period" under subdivision 3 of section 591 of the Labor Law. At first blush, their holding seems unjust because concededly claimant received full pay for at least one week that he was off, but the wording of the statute seems to support the board.

This recent statute enacted to solve the perplexing problem of "vacations", literally followed, seems to mandate the holding herein despite its apparent injustice. In defining "vacation period", subdivision 3 of section 591 states: "3. Vacation period. (a) A 'vacation period' during which no benefits shall be payable to a claimant is a period (1) during which a claimant has a temporary respite from work; *and* (2) for which entire period such claimant is given a vacation payment or allowance *by his employer directly*, even if such payment or allowance be deemed to be remuneration for prior services rendered as an accrued contractual right; *and* (3) where such claimant is substantially fully employed by such employer both *during the last work week before and the work week immediately following such period.*" (Italics supplied.) There follows five stated instances where a week of unemployment prior to or subsequent to a period of paid vacation will not give rise to a claim for unemployment insurance benefits. Thus a claim will not be entertained if: (1) the prior or subsequent unemployment is due to claimant's unavailability to perform his usual work which his employer has scheduled for him and which is available to him; (2) such unemployment is due to a natural slackening or gradual resumption of operations prior to or subsequent to the vacation shut down; (3) the unemployment is due to the taking of inventory; (4) the unemployment is due to the fact that coemployees are having a vacation period longer than claimant's; (5) the unemployment is due to a combination of the above four factors. Section 591 (subd. 3, par. [d]) states in specific language that unless one of the above five exceptions can be invoked, an employee who is unemployed for the week prior to or subsequent to the week he enjoys a proper paid vacation is entitled to unemployment benefits for his entire period of inactivity. The board's decision is predicated on that part of the statute which states as one of the requisites for a "vacation period" that the vacation payment be given the employee directly by his employer. The board points out that the word "directly" does not inadvertently appear and quotes from the supporting statement submitted to the Legislature with the bill. "Considerations, both of practice and of equity, compel the requirement that the payment come to the claimant directly from his employer. Many collective labor agreements obligate the employers to make contributions to trusted funds out of which payments are ultimately made to eligible employees. * * * To deal with such payments as if they were vacation moneys would not only work inequities in many instances but would entail a backbreaking administrative task in view of the wide variations which exist. For those reasons, it is provided that only money given by the employer directly himself can be considered as payment for vacation." (N. Y. Legis. Doc., 1958, No. 31, p. 54.) We have no alternative but to recognize the policy considerations which the Legislature adopted when it required direct payments by the employer. We cannot distort the meaning of the word "directly". The particular injustice to the employer in the present case emanates from the logical statutory progression seemingly mandated by clause (3) of paragraph (a) of subdivision 3 of section 591. As specified above, unless one of five exceptions is applicable, the claimant will be eligible for benefits for his entire period of inactivity if he is not "substantially fully employed by [his] employer both during the last work week before and the work week immediately following" a properly paid vacation period. Since a week of inactivity which is compensated only by indirect payments by the employer is not listed as one of the exceptions, the conclusion reached by the board, that the claimant is eligible for two weeks of unemployment benefits logically follows. The reasons which motivated the Legislature to enact the vacation provisions of the Labor Law are best set forth in a supporting statement contained in the Report of the Joint Legislative Committee on Unemploy-

ment Insurance dated March 18, 1958, in connection with an almost identical bill which was passed by the Legislature but vetoed by the Governor. "Vacations have from the outset created a baffling problem in the administration of unemployment insurance benefits. There is general agreement that a claimant who is enjoying a true vacation with pay should not receive benefits during that time. The difficulty has been to determine, under widely varying practices and bewildering differences in the provisions of controlling collective labor agreements, whether, *first*, any given payment is really a payment for a vacation and, *second*, whether a lay-off is in fact a respite from work for purposes of rest or whether it is no more than part of a more extended lay-off due to economic causes. * * * Next comes the criterion whereby to determine whether the time designated as a 'vacation' is really time taken away from work for purposes of rest or whether it is no more than part of an extended economic lay-off. The test laid down is whether the claimant was substantially employed during the week immediately preceding as well as during the week immediately following the period called a 'vacation'. If he was so employed in both of said weeks then such period can fairly be considered to be a true vacation. If he was not so employed, then the period is no more than part of a longer lay-off and it is artificial and unrealistic to speak of it as a true 'vacation.'" (N. Y. Legis. Doc., 1958, No. 31, pp. 53, 54.) The one week which the claimant received a direct payment from his employer would seem to be a true vacation. Any inference that any part of the two-week period was possibly intended as a lay off and not a rest period is clearly rebutted because, it was the union and the employees who initiated and insisted on the vacation period and the employer was opposed to the vacation period since it was during his busy season, and, actually kept operations open and permitted any of the employees to continue working. If then, the provisions of subdivision 3 of section 591 of the Labor Law are strictly applied to the present case, the result would be discordant with the underlying policy of the "vacation period" concept which is designed to preclude an employee who is enjoying a true rest from work and being paid directly by the employer to receive a windfall in unemployment benefits. But this windfall is apparently recognized as proper by section 591 (subd. 3, par. [d]) which, as priorly noted, requires the employee to fall within one of the five exceptions in paragraph (b) before benefits are denied him. We feel constrained to follow the statute. Apparently this legislation, well intended, needs revision, if similar injustices are to be avoided. The Referee on the facts probably reached substantial justice but not within and upon the plain wording of the statute. Decision unanimously affirmed, with costs to respondents.